* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing parties have shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's award of benefits and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On January 29, 2001, plaintiffs' decedent Eleazar Juarez-Garcia was an employee of Sanders Constructors, Inc.
3. At all relevant times herein, Sanders Constructors was insured for workers' compensation purposes by CNA Insurance Company.
4. The deceased employee's average weekly wage was $415.95, which yields a compensation rate of $277.30 per week.
5. On January 29, 2001, the deceased employee sustained a compensable injury by accident arising out of and in the course of his employment with Sanders Constructors.
6. As a result of his injuries in said accident, the deceased employee Eleazar Juarez-Garcia lost his life.
7. The parties entered into a Form 30 agreement for the payment of death benefits to the total dependents of Eleazar Juarez-Garcia. The agreement, which was approved by the Industrial Commission on or about November 14, 2002, expressly stated that it was without prejudice to the right of plaintiffs to request a hearing to determine whether defendants should be required to pay a penalty of TEN PERCENT (10%) of the amount of compensation due under the Form 30 agreement for willful violation of OSHA safety regulations and statutes that were alleged to be proximate causes of the fatal injury by accident arising out of and in the course of the deceased employee's employment that is the subject of this claim.
8. The issue to be determined from this hearing is as follows:
 Should the defendants be required to pay a penalty of TEN PERCENT (10%) pursuant to N.C. Gen. Stat. § 97-12
for willful violations of OSHA safety regulations and statutes that were proximate causes of the incident that is the subject of this claim?
* * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The deceased employee, Eleazar Juarez-Garcia, was born on February 22, 1974, and on the date of his death he was 26 years old.
2. On January 29, 2001, the deceased employee suffered a fatal injury by accident arising out of and in the course of his employment with Sanders Constructors as the result of the collapse of the wall of a trench in which he was working on that date.
3. The North Carolina Department of Labor through its Occupational Safety Health Division (hereinafter "the Division") caused an investigation of the circumstances surrounding the incident that gives rise to this claim to be performed by its agent Rebecca Israel.
4. As part of her investigation on the date of the incident, Ms. Israel took statements of all employees of Sanders Constructors who were present at the site of the incident that gives rise to this claim.
5. As part of her investigation, Ms. Israel determined that spoil piles of soil from the trench that Sanders Constructors was digging on January 29, 2001, were placed less than two (2) feet from the edge of the trench and such placement was a violation of OSHA regulations found at 29 C.F.R. § 1926.652(j)(2). However, inasmuch as the ditch cave-in came from loose soil on the opposite side of the trench from the spoil piles, likely as a result of previous placement of underground utilities there, this safety violation was not a proximate cause of death.
6. As part of her investigation, Ms. Israel determined that the portion of the trench in which the deceased employee was working at the time of his death lacked an "adequate protective system" against the hazards of trench wall cave-ins. However, based upon the totality of the evidence, decedent employee's walking to the end of the ditch approximately 2 hours prior to the end of the day was an unexplained anomaly. At the end of each workday, a trench box was moved to the end of the pipe so that workers could work in safety to prepare for the ditch to the refilled to ground level overnight. Thus the lack of a trench box at that location at that time of day was not a willful safety violation since there was no expectation that any employee would be at location at that time. A trench box was only required over the portion of the pipe on which work needed to be performed. It had never been necessary for an employee to leave the trench box to perform work, and the trench box could be moved to the portion of the pipe on which work was to be performed. It was never intended or expected for any employee to leave the trench box to perform work tasks.
7. The lack of an adequate protective system for a trench of the dimensions of the one dug by Sanders Constructors on the date of the incident was a violation of OSHA regulations found at29 C.F.R. § 1926.652(a)(1). However, there was no showing that this violation was a proximate cause of death.
6. As a result of her investigation and her interviews with witnesses, including Kevin McCracken, Ms. Israel concluded that at the end of each day Sanders Constructors would place a piece of lumber at the end of the pipe to prevent backfill from entering the pipe as the exposed end was covered up at the end of the workday. This lumber would also mark the end of the pipe where work would begin the next working day.
7. McCracken was a foreman for Sanders Constructors and had been so employed for 1.5 to 2 years before the incident giving rise to this claim, and McCracken had undergone Competent Person Training in safe excavation and trenching practices.
8. Sanders Constructors was previously cited on September 22, 1997 for three violations of OSHA safety regulations pertaining to safe trenching operations, two of which were classified as "Serious." One of the "Serious" citations was for violation of29 C.F.R. § 1926.652(a)(1).
9. As a result of Ms. Israel's investigation, she caused three (3) citations for fifteen (15) violations of OSHA safety regulations to be issued against Sanders Constructors.
10. "Citation Number One" consisted of two (2) "Serious Willful" violations of OSHA safety regulations.
11. "Citation Number Two" consisted of ten (10) "Serious" violations of OSHA safety regulations. The remainder of the cited violations were classified as "Non-Serious."
12. Thereafter, Ms. Israel turned the matter over to her supervisor, Douglas R. Jones.
13. After Sanders Constructors received formal notice of the citations, Sanders Constructors contested the citations through the Division's appeal procedures.
14. On July 8, 2003, the Division and Sanders Constructors entered into a consent settlement of the citations against Sanders Constructors for violations of OSHA safety regulations.
15. Under the terms of the consent settlement, the two (2) "Serious-Willful" violations in "Citation Number One" were reclassified as "Serious" violations.
16. Additionally, under the terms of the consent settlement, five (5) of the "Serious" violations in "Citation Number Two" were dismissed, penalties for two (2) of the remaining "Serious" violations were reduced, and the remaining three (3) "Serious" violations and the associated penalties remained in effect.
17. The consent settlement between the Division and Sanders Constructors was subsequently approved by hearing examiner Richard M. Koch on July 14, 2003.
18. Ms. Israel determined that a number of the "Serious Willful" and "Serious" violations of OSHA regulations by Sanders Constructors contributed to or caused the deceased employee's injury and subsequent death. However, her determinations are not binding upon the Industrial Commission, which must make its own determination of what constitutes a willful violation of a statute within the meaning of N.C. Gen. Stat. § 97-12.
19. Ray Boylston rendered expert testimony at the hearing of this matter in the field of occupational safety and health. Boylston testified that he reviewed Ms. Israel's report and that based on his review of the report that the violations were willful and some caused the deceased employee's injury and death. Once again, his determinations are not binding upon the Industrial Commission.
20. At the time that the deceased employee suffered his fatal injury by accident arising out of and in the course of his employment, he was outside the trench box that was in place for work on the joint of a twenty (20) foot section of ductile iron pipe that was or was being connected, and the trench box being used was only eight (8) feet long.
21. The deceased employee walked on top of the section of ductile iron pipe outside the trench box with a shovel in his hand, and while doing so, one side of the trench caved in and caused the deceased employee's death. Witnesses could only speculate as to the reason decedent left the safety of the trench box with a shovel in his hand and walked to the end of the pipe.
22. Although argued, there was no showing that lack of safety training contributed to decedent's death.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-12 provides in relevant part as follows: "When the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent (10%). . . . The burden of proof shall be upon him who claims an exemption or forfeiture under this section."
2. The North Carolina Occupational Safety and Health Act provides that "[a]ll occupational safety and health standards promulgated under the federal act . . . shall be adopted as the rules of the Commissioner of this State unless the Commissioner decides to adopt an alternative State rule as effective as the federal requirement and providing safe and healthful employment in places of employment." N.C. Gen. Stat. § 95-131(a). Additionally, N.C. Gen. Stat. § 95-129(2) provides that "[e]ach employer shall comply with occupational safety and health standards or regulations promulgated pursuant to this Article."
3. Accordingly, the violations of OSHA safety regulations for which the Division cited Sanders Constructors were violations of "statutory requirements" within the meaning of N.C. Gen. Stat. §97-12.
4. Sanders Constructors willfully violated OSHA safety regulations, which are "statutory requirements" within the meaning of N.C. Gen. Stat. § 97-12.
5. However, plaintiff failed to prove that Sanders Constructors' willful violations of OSHA safety regulations were proximate causes of the death of the deceased employee Eleazar Juarez-Garcia. N.C. Gen. Stat. § 97-12. The use of an 8-foot trench box rather than a 20-foot trench box was not a proximate cause. Placing the spoil pile closer to the side of the ditch than two feet, when the cave-in originated on the opposite side of the ditch, was not a proximate cause. Lack of proper safety training was not shown to be a proximate cause. Lack of ladders every 20 feet was not shown to be a proximate cause. In short, none of the safety violations found by OSHA were shown to be a proximate cause of death under the circumstances of this case.
7. Determining whether or not Deputy Commissioner Glenn erred by failing to order the OSHA Division to provide unredacted copies of exhibits was not necessary to the decision in this case, and the Full Commission leaves this question to be decided in a proper case.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiffs are not entitled to a 10% penalty under the provisions of N.C. Gen. Stat. § 97-12.
2. Each party shall bear its own costs.
This 30th day of June 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ DIANE C. SELLERS COMMISSIONER